# EXHIBIT A



STATE OF RHODE ISLAND
DEPARTMENT OF HEALTH

**IN THE MATTER OF:**

**Joseph F. Grillo, MD**
**License No.: MD 11095**
**Case No.: C11-0125**

### ORDER AND DECISION
### FOR SUSPENSION

The Rhode Island Board of Medical Licensure and Discipline ("Board") hereby suspends the probationary license of Joseph Grillo MD ("Respondent") to practice medicine in the state of Rhode Island due to his repeated and intentional violations of the express terms of a Consent Order entered and ratified by the Board on March 11, 2020. A true and exact copy of said Consent Order is attached hereto as Exhibit A. As set forth below, Respondent was required to be monitored by the Rhode Island Physician Health Program and follow their recommendations for 10 years, including requirements for strict and frequent testing to ensure that he is not under the influence of alcohol or controlled substances. Respondent refused to comply with the testing requirements set forth by the Physician Health Program and has been removed from the monitoring program in violation of the terms of the aforesaid Consent Order.

## Procedural and Factual History

1. Respondent was first licensed as a physician in the state of Rhode Island on February 12, 2003.

2. On February 12, 2007, the Board placed Respondent on probation for a five-year period while he was in treatment with the Physician Health Program of the Rhode Island Medical Society.

3. On February 11, 2011, prior to the completion of probation, Respondent was charged with: operating a motor vehicle under the influence of alcohol, negligent operation of a motor vehicle, leaving the scene of an accident, not possessing a vehicle registration, and breaking and entering a building, with destruction of property.

4. On February 22, 2011, the Director of the Rhode Island Department of Health ("Director") summarily suspended Respondent's medical license and controlled substance registration.

5. Respondent pleaded guilty to driving under the influence and was fined and ordered to pay restitution for the damage caused from the automobile accident.

6. Respondent was found to be in violation of R.I. Gen. Laws § 5-37-5.1(15), which defines "unprofessional conduct" to include "[d]ependence upon controlled substances, habitual drunkenness, or rendering professional services to a patient while the physician or limited registrant is intoxicated or incapacitated by the use of drugs."

7. Respondent continued to work with the Physician's Health Program ("PHP") for nearly three years to address the events relating to the February 2011 suspension.

8. In 2013, Respondent requested to be reinstated to practice medicine in Rhode Island. After producing evidence of remission, on January 8, 2014, Respondent's license was reinstated pursuant to a Consent Order ratified by the Board, which set forth a number of conditions, including a requirement that he follow the testing and monitoring requirements of the RI-PHP.

9. On October 13, 2015, Respondent surrendered his license due to his failure to comply with the terms of the January 8, 2014 Consent Order.

10. Respondent approached the Board in 2020 to request that his medical license be reinstated due to his compliance with the RI-PHP recommendations and program. Respondent produced evidence of remediation and continuous treatment for his underlying substance use disorder conditions. Respondent produced a forensic psychiatry evaluation determining that he was fit to return to the practice of medicine. He also engaged a monitoring program to verify and maintain his clinical recovery.

11. The Board determined that Respondent provided satisfactory evidence of clinical competence by continuing to maintain Board certification with the American Board of Internal Medicine and also by providing evidence that he successfully completed a significant number of continuing medical education (CME) credits.

12. On March 11, 2020, the Board reinstated Respondent's license under a probationary period for 10 years so long as Respondent remained compliant with each and every term and condition of the Consent Order.

13. One of the conditions to granting Respondent's probation was his full compliance with the RI-PHP program, including all monitoring and testing recommendations. The RI-PHP monitoring program includes aggressive oversight and testing of blood, urine and other samples for possible alcohol or drug abuse. Respondent was required to utilize Sober Link (a portable breathalyzer) three times daily for routine testing.

14. Respondent likewise was required to continue treatments with his primary care physician, addiction medicine physician, and psychiatrist and was further required to notify the Board and or RI-PHP of any substantive changes in his treatment.

15. The requirements set forth in the March 11, 2020 Consent Order were mandatory and necessary in order to maintain his probationary status.

16. Despite the clear requirements set forth under the 2020 Consent Order, numerous violations of the Consent Order terms were recently reported to the Board by the RI-PHP.

17. On June 17, 2024, RI-PHP received notification from Sober Link of a positive breathalyzer test result from a test conducted on June 13. Because more than 72 hours had elapsed, rendering confirmatory urine testing inappropriate, a Phosphatidylethanol (PEth) test was scheduled for June 20 and then later changed to June 24. Respondent did not appear for the test on June 24. The

Respondent instead appeared for a specimen collection for the PEth test on June 25. Due to a staffing error, the chain of custody was not properly documented for the specimen to be used for the PEth test.

18. The PEth test was then self-administered by the Respondent on July 2 or 3, 2024 at Respondent's home. However, Recovery Trek (the testing laboratory) informed RI-PHP that the video recording of the scheduled in-home test showed that the test was invalidated because Respondent stepped away from the smartphone camera and also because filled the collection tube using a non-approved method (capillary blood instead of whole blood). In order to redress the invalidated test results, RI-PHP instructed responded to appear for a fingernail test on July 9, 2024 at a collection lab located in North Providence. Respondent was required to appear for the test on either July 19 or any business day during the week of July 22.

19. Despite the clear instructions provided by RI-PHP, Respondent refused to appear for the fingernail test.

20. When Respondent refused, the Chair of the RI-PHP, Dr. Kerzer, emailed Respondent to remind him that the RI-PHP is obligated to monitor Respondent's compliance with the Board's Consent Order. Dr. Kerzer also explained that the fingernail test was mandatory due to the length of time that transpired since Respondent's positive breathalyzer test results of June 13, 2024.

21. Despite the admonitions by RI-PHP, Respondent remained non-compliant with RI-PHP instructions and refused to appear for the fingernail test.

22. In addition to the noncompliance with the RI-PHP requests, Respondent also missed numerous breathalyzer tests scheduled in June and July of 2024, including various times on June 20, 24, and July 1, 8, 9, 26, 27 and 31.

23. Respondent was also late in performing breathalyzer tests scheduled at various times on June 14 and 26, and July 3, 13, 15, 16, 20, 22, 23.

24. In total, during the months of June and July 2024, Respondent missed 9 scheduled breathalyzer tests and was late in performing 16 additional breathalyzer tests.

25. As a result of Respondent's non-compliance with the express requirements of the RI-PHP monitoring program, the RI Physician Health Committee met on August 6, 2024, and unanimously voted to terminate Respondent's monitoring agreement and participation in the RI-PHP program.

26. The March 11, 2020 Consent Order expressly requires Respondent to remain a participant in, and fully compliant with, each and every monitoring and testing requirement imposed by RI-PHP. *See*, March 11, 2020 Consent Order at ¶5(e), p. 5.

27. The failure by Respondent to remain compliant with the terms of the March 11, 2020 Consent Order, and his termination from the RI-PHP program, constitutes unprofessional conduct, in violation of R.I. Gen. Laws §5-37-5.1(24)(unprofessional conduct includes the violation of "any provision or provisions of this chapter or the rules and regulations of the Board or any rules or regulations promulgated by the Director *or of an action, stipulation, or agreement of the Board*";)(emphasis provided).

28. Respondent acknowledges that any violation of the terms of the March 11, 2020 Consent Order subjects Respondent to further disciplinary action by the Director, including the possibility of a suspension of his license. *See*, March 11, 2020 Consent Order at ¶7, p. 6.

**ORDER**

After considering the above findings, I have determined that the Respondent intentionally and repeatedly breached the terms of the March 11, 2020 Consent Order and is now in violation of his probationary status with his license. The testing protocol administered by RI-PHP is critical to ensuring that Respondent remains capable of providing safe and effective health care to the public in the state of Rhode Island.

I therefore ORDER and ADJUDGE:

That the medical license of Respondent, Joseph Grillo, M.D. be immediately **suspended** in the State of Rhode Island until further Order by either this Office, the Board of Medical Licensure and Discipline, or a designated Administrative Hearing Officer.

Respondent shall promptly be afforded an administrative hearing on this Order and Decision under the provisions of the Administrative Procedures Act, R.I. Gen. Laws § 42-35-1, *et seq.*, and also pursuant to Chapter 5 of Title 37 of the Rhode Island General Laws.

So ORDERED this 21 day of August, 2024

Jerome Larkin, MD
Director
Rhode Island Department of
Health
3 Capitol Hill, Room 401
Providence, RI 02908