# EXHIBIT B

RHODE ISLAND BOARD OF MEDICAL LICENSURE AND DISCIPLINE

IN THE MATTER OF:
Joseph F. Grillo, MD
License No. MD 11095
Case No. C11-0125

## AMENDED CONSENT ORDER AND REINSTATEMENT OF LICENSE

This Order hereby amends the March 1, 2020 Consent Order relating to Joseph F. Grillo, MD ("Respondent"). As set forth below, Respondent's license to practice medicine in the State of Rhode Island is hereby reinstated on a probationary basis.

The Board of Medical Licensure and Discipline ("Board") makes the following

## FINDINGS OF FACT

1. Respondent was first licensed as a physician in Rhode Island on February 12, 2003.

2. On February 12, 2007, the Board placed Respondent on probation for a five-year period while in treatment with the Physician's Health Committee of the Rhode Island Medical Society. On February 16, 2011, prior to the completion of the five-year probation, Seekonk (Massachusetts) Police charged Respondent with six offenses: operating a motor vehicle under the influence of alcohol, negligent operation of a motor vehicle, leaving the scene of an accident involving property damage, not possessing vehicle registration, breaking and entering a building, and destruction of property.

3. On February 22, 2011, pursuant to Respondent's arrest and charging, the Director ("Director") of the Rhode Island Department of Health ("RIDOH") summarily suspended Respondent's physician license and controlled substance registration ("License").

4. Respondent later pleaded guilty to driving under the influence. He was fined and ordered to pay restitution for damages he had caused.

5. The conduct described above constitutes a violation of R.I. Gen. Laws § 5-3 7-5.1 (5), which defines "unprofessional conduct," as including "[d]ependence upon controlled substances, habitual drunkenness, or rendering professional services to a patient while the physician or limited registrant is intoxicated or incapacitated by the use of drugs."

6. Following the suspension of his License, Respondent continued to work with the Rhode Island Physicians Health Program ("PHP") for nearly three years to address concerns relative to the events that precipitated the February 2011 suspension.

7. In 2013, Respondent approached the Board for reinstatement of his License and presented substantial evidence of remission. Accordingly, on January 8, 2014, Respondent's License was reinstated pursuant to a Consent Order which included, among other conditions, the requirement that Respondent continue to follow the recommendations of the PHP.

8. On October 7, 2015, the PHP notified the Board that Respondent was not fully compliant with PHP obligations and that patient safety was at risk.

9. On October 13, 2015, Respondent met with the Board and surrendered his License due to his failure to comply with the terms of the January 8, 2014 Consent Order.

10. Respondent subsequently approached the Board in 2020 to request that his medical license be reinstated due to his compliance with the PHP recommendations and program. Respondent produced evidence of remediation and continuous treatment for his underlying substance use disorder conditions. Respondent produced a forensic psychiatry evaluation determining that he was fit to return to the practice of medicine. He also engaged in a monitoring program to verify and maintain his clinical recovery.

11. On March 11, 2020, the Board entered a consent order that reinstated Respondent's license on a probationary basis, subject to the following conditions:

2

a. Respondent must check the PDMP prior to prescribing any controlled substance to any patient.

b. Respondent's license remains on a probationary status for 10 years.

c. Respondent must practice only in a licensed health care facility, of which facility he may not be the sole physician.

d. Respondent, at this own expense, shall engage the services of a Board approved monitor, and shall cause such monitor to review ten of Respondent's medical records each month for 12 consecutive months. If, after no fewer than three months, the monitor's reviews of Respondent's medical records reveal that such medical records are satisfactory, Respondent may request that monitoring continue for the remainder of the 12-month period on a quarterly basis. Results of the medical record reviews shall be sent to the Board at DOH.PRCompliance@health.ri.gov no later than 15 calendar days after the close of the preceding month or, if applicable, quarter. Respondent's first monitoring report must be received no later than 15 days after the close of Respondent's first full month restored to practice.

e. Respondent must be monitored by the PHP and shall follow their recommendations for 10 years, which recommendations are incorporated herein by reference.

f. Respondent must continue treatment with his primary care physician, addiction medicine physician, and psychiatrist and shall notify the Board and/or PHP of any substantive changes in his treatment.

g. Respondent must not miss any treatment provider appointments. In the event Respondent is unable to attend a scheduled appointment, Respondent must provide documentation of the medical need for his absence to both his provider and the PHP.

h. Respondent must not have excessive use of vacation time; Respondent shall contact the Board for approval of any vacation >14 consecutive calendar days and obtain an approved plan for compliance.

1. Respondent must continue to utilize Soberlink®.

j. Respondent must notify the Board of any change in employment and if he applies for a license to practice medicine anywhere in the world.

12. A series of violations of the Consent Order terms have now been reported to the Board by the PHP.

3

13. As a result of Respondent's non-compliance with the express requirements of the PHP monitoring program, the RI Physician Health Committee met on August 6, 2024, and unanimously voted to terminate Respondent's monitoring agreement and participation in the PHP program.

14. The termination of the PHP monitoring agreement is a violation of the March 11, 2020 Consent Order, (*see*, March 11, 2020 Consent Order at ¶5(e), p. 5), and constitutes unprofessional conduct, in violation of R.I. Gen. Laws § 5-37-5.1(24)(unprofessional conduct includes the violation of "any provision or provisions of this chapter or the rules and regulations of the Board or any rules or regulations promulgated by the Director *or of an action, stipulation, or agreement of the Board*")(emphasis provided).

15. As a result of the violation, an Order of Suspension was entered on August 21, 2024 by Jerome Larkin, MD, Director of the Rhode Island Department of Health.

16. Notice of an administrative hearing was provided to Respondent at the time of the summary suspension. The hearing was scheduled for August 28, 2024.

17. The parties appeared at the hearing and stipulated that Respondent was afforded the opportunity for an evidentiary hearing and that Respondent waived his right to said hearing while negotiations are conducted. Respondent further stipulated and acknowledged that he would abide by the terms of the August 21, 2024 Order of Suspension and not practice medicine in the State of Rhode Island until such time as when the Hearing Officer decides this matter, or further action is taken by either the Director or the Board of Medical Licensure and Discipline. Respondent stipulated to the entry of an order by the Administrative Hearing Officer to that effect.

4

18. Respondent now agrees to the entry of this Amended Consent Order in order to be reinstated to practice medicine on a probationary basis in the State of Rhode Island, under the following terms:

1. Respondent shall remain under the jurisdiction of the Board.

2. Respondent understands that this Amended Consent Order is subject to final approval of the Board and is not binding on Respondent until final ratification by the Board.

3. If ratified by the Board, Respondent hereby acknowledges and waives:

    a. The right to appear personally or by counsel or both before the Board;

    b. The right to produce witnesses and evidence on his behalf at a hearing;

    c. The right to cross-examine witnesses;

    d. The right to have subpoenas issued by the Board;

    e. The right to further procedural steps, except for those specifically contained herein;

    f. Any and all rights of appeal of this Amended Consent Order;

    g. Any objection to the fact that this Consent Order will be presented to the Board for consideration and review; and

    h. Any objection to the fact that this Amended Consent Order will be reported to the National Practitioner Data Bank and Federation of State Medical Boards and posted to the RIDOH public website.

4. The parties agree that all monitoring that was performed by the Rhode Island Physicians Health Program under the terms of the March 11, 2020 Consent Order shall now be conducted by a third-party monitor, Hired Power, located in Huntington Beach, California. The testing and monitoring protocol to be implemented by Hired Power shall be pre-approved by the Chief Administrative Officer Staci A. Fischer, MD, prior to its implementation. Said testing and monitoring protocol shall include a DNA-verified urine drug screening component that requires

Respondent to perform a DNA swab while on live video with Respondent's case manager. Test specimens will be sent to a pre-approved lab to create a baseline data point. Random urine drug tests shall be required at a time and day established by Respondent's case manager. Any required test that is not completed by Respondent at the time ordered by his case manager shall constitute a positive test result and could prompt testing of other samples and tissues to determine whether Respondent has violated the terms of his agreement to refrain from the use of non-prescribed drugs, including alcohol Furthermore, Hired Power shall provide Dr. Fischer with quarterly monitoring reports concerning all testing performed upon Respondent and shall immediately notify Dr. Fischer of any failure by Respondent to perform a required or requested drug/alcohol test.

5. In the event that any term of this Amended Consent Order is violated, including any failure by Respondent to fully comply with each requirement of the testing and monitoring program to be implemented by Hired Power, or any failure to abide by all recommendations presented by said monitor, shall constitute a violation of this Amended Consent Order and will subject Respondent to further discipline, up to and including the possibility of an immediate suspension of his license, which shall remain in full force and effect until an administrative hearing is convened with notice to Respondent of any and all such violations. The administrative hearing officer may further suspend Respondent's license or impose other discipline as requested by the Board, including a revocation of said license, if the alleged violation is proven by a preponderance of evidence.

As Assented to and Signed this ___7___ day of ___January___ 2025.

_____
Joseph F. Grillo, M.D.

6

Ratified by the Board of Medical Licensure and Discipline on the 12th day of

February 2025.

Staci A. Fischer, MD
Chief Administrative Officer
Rhode Island Board of Medical Licensure and Discipline